Appeal from Municipal Court, Borough of Brooklyn, First District. Action by the John J. Daly Iron, Steel & Metal Company against the United States Metal & Manufacturing Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before KELLY, JAYCOX, and CLARK, JJ.

Charles J. Hardy, for appellant.

Lawrence T. Gresser, for respondent.

---

## In re MARA.

(Surrogate's Court, New York County. July 17, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS AGAINST ESTATE—PROOF.

    While the burden of proving a disputed claim against a decedent's estate is on claimant, and a claim withheld during decedent's life and sought to be enforced after his death should be carefully scrutinized, and admitted only on satisfactory proofs, yet having been rejected, and claimant put to his proofs, no different evidence from that required in other proceedings for enforcement of debts of a similar nature is required; so that production of a note purporting to have been made by deceased and proof of consideration is prima facie sufficient, putting on the executrix the burden of sustaining her plea of the note being spurious.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. § 221.*]

---

**2.** EVIDENCE (§ 60*)—PRESUMPTION—INNOCENCE.

As against a litigant claiming forgery is the presumption of innocence, putting on her, in a civil case, the burden of establishing the claim by a preponderance of proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 81; Dec. Dig. § 60.*]

**3.** EVIDENCE (§ 568*)—OPINION EVIDENCE.

Opinion evidence is merely an aid to the trior of facts, and never conclusive, especially when the opinion is founded on a hypothesis demonstrably incomplete or inconclusive.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2392–2394; Dec. Dig. § 568.*]

**4.** EVIDENCE (§ 573*)—OPINION EVIDENCE—CONFLICT WITH OTHER EVIDENCE.

As against an opinion of a handwriting expert, a note must be found genuine; a disinterested and unimpeached witness testifying that, on its holders offering to sell it to him in the presence of the person whose name was signed to it as maker, such person objected, and said he would "take it up shortly."

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2399; Dec. Dig. § 573.*]

In the matter of the judicial settlement of the account of Elizabeth Mara, executrix of Patrick Harris, deceased. Claim of William B. Koller & Bro. sustained.

John H. Rogan, for claimant.
Frank T. Fitzgerald, for executrix.

FOWLER, S. This matter came on for hearing before the late surrogate pursuant to a written consent of the parties, and was thereafter continued before his successor, the present incumbent, pursuant to a like consent.

The sole question presented to the surrogate for his determination involves the validity of a promissory note for $500, dated New York, April 16, 1903, and payable on demand to the order of William B. Koller & Bro., with interest at 6 per cent. This note of hand purports to be made by Patrick Harris, deceased, and payment of such note, with balance of interest, is now claimed from the accounting executrix by William B. Koller & Bro., the payees named in the note. Receipts of interest are indorsed on the note as follows:

"Rec. Jan. 1, '07, ninety doll., int. to April 16, '06. W. K. & Bro."
"Received Jan. 3, '09, sixty doll., int. to Apl. 16, '08."

The $150 interest thus conceded to be paid is credited by Koller & Bro. in their proof of claim.

It seems that Koller & Bro. filed objections to the account of the executrix, and that those objections resulted in the stipulations submitting the validity of the note mentioned to the surrogate. The trial of the issue of fact was not very formal, and objections to the competency of interested witnesses seem to be waived in most instances. Yet, if the contention of the executrix is analyzed, it raises no less grave an issue than forgery of the note thus presented by the claimants for payment.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It appears in evidence that the payees of the note gave Patrick Harris, on the day the note of hand bears date, their own check to his order for the sum of $500. This check also bears the indorsement of Patrick Harris, and it is claimed to represent the consideration for which the note was given to claimants. In the course of the hearing the counsel for the executrix conceded that this check was taken from Koller & Bro.'s check book in regular order and that it was cashed at the bank on which it was drawn, and that the proceeds were paid to Mr. Patrick Harris, deceased. Thus we have the genuineness of the check practically admitted by counsel for the executrix. The expert called by the executrix seemed also to concede the genuineness of the indorsement by Patrick Harris of the check of even date with the note. Indeed, he used such indorsement as a genuine writing for the purpose of comparison with the signature on the note. The only other documents introduced in evidence for the purpose of comparison appear to be checks of a third person, dated in 1908 and 1909, and bearing the indorsement of Patrick Harris. The lapse of time between the date of the note and the checks of 1908 and 1909 was considerable; but the expert called for the executrix, I think, conceded the similarity of the general makeup of the letters composing the words "Patrick Harris" in all save one of the documents used for the purpose of comparison on the hearing. The one excepted was illegible and made under circumstances which should have excluded it from comparison.

[1] The burden of proving a disputed claim against the estate of one deceased is, of course, on the claimant. "Ei incumbit probatio, qui dicit, non qui negat." Walbaum v. Heaney, 104 App. Div. 412, 93 N. Y. Supp. 640. And it is also a general principle that a claim withheld during the life of an alleged debtor and sought to be enforced after his death should be carefully scrutinized, and admitted only upon satisfactory proofs. Kearney v. McKeon, 85 N. Y. 137. But when the creditor's claim is rejected and he is put to his proofs, the law requires no different evidence from that required in other proceedings for the enforcement of debts of a similar nature. Here the creditors produce a note purporting to be made by the deceased and prove a consideration. Prima facie the proofs suffice to support such claim. The executrix, to meet the evidence, does not plead payment, but affirms that the note is spurious. It would seem that at this stage the burden of sustaining such plea is with the executrix, and if she fails to sustain her plea that the holders of the note must prevail.

[2] When a charge of forgery is made by a litigant, I take it that even in a civil proceeding the presumption of innocence applies in favor of the persons charged. There is no other presumption more highly favored in law than that of innocence, and this is so whether such a charge of crime or gross delict arises in a direct proceeding to punish the offenders or in some collateral proceeding. "Injuria non præsumitur." Ross v. Hunter, 4 T. R. 33; Best on Evidence (3d Am. Ed.) § 346. So strongly is the presumption of innocence applied by the courts that it generally prevails over conflicting presumptions.

Clayton v. Wardell, 4 N. Y. 237, 238. But even if the executrix is relieved from proving the forgery charged beyond reasonable doubt, as would be the case if the people were the prosecutors of such a charge, certainly she must establish the truth of her plea by a preponderance of proof.

[3] With this brief survey of general principles applicable in any judicial solution of the issue here presented for trial, we proceed to consider the state of the proofs. The only testimony in support of the charge of evil fabrication or falsification of the note in controversy is given by the handwriting expert called for the executrix, and his testimony, in substance, is to the effect that the similarity between the signatures to the check of 1903 and the note of hand of the same date is too great to be natural. He swears that it is almost impossible for any one to write signatures twice alike, and from these premises he infers that the note is not genuine. If we concede the accuracy of the premises, the conclusions of the expert may be warranted. But in looking closely over the testimony the surrogate finds that no writings by Patrick Harris are in evidence, except his signatures. If Harris was unable to write other than his name, as is suggested by the fact just noticed, it would seem to the surrogate that the writing of Patrick Harris was purely mechanical, and not the exercise of a literary faculty in which letters tend to become arbitrary or conventional, sometimes wholly arbitrary in the case of purely literary people. The uneducated man, who can write his name only, would probably take fewer liberties with the letters combined in his name, and thus a tendency to exact mechanical reproduction of signatures might be apparent in his case, when it would not be apparent by the various examples of the signatures of the more educated and freer cursive handwriters.

To one who can write his name only his signature tends to be stereotyped, for the letters then mean but one thing. This is not true in the case of handwriting, which means a thousand things to the writer. It may even be doubted whether a signature maker is a handwriter at all, and whether expert testimony is competent in his case. At least this hypothesis was not considered by the expert witnesses or by counsel in the cause, and yet it cannot be excluded by the surrogate in any attentive consideration of the testimony; for the surrogate, and not the expert, is to decide the issue of fact in this cause. Opinion evidence is always offered as an aid to the triors of fact, and it is never conclusive, especially when the opinion is founded on a hypothesis demonstrably incomplete or inconclusive.

There is perhaps another good reason why the surrogate should form his own independent conclusion in this cause. The expert for the executrix assumed that the check was genuine, and then reached his conclusion that the note, from its close resemblance, was simulated. Had the note been conceded by the expert to be genuine, the check could be proved a forgery by the same process of reasoning. Without, however, questioning the accuracy of the scientific methods of the professional expert in question, it seems to the surrogate that other testimony given in by the holders of the note precludes the

surrogate from considering the opinion evidence at all. The handwriting expert called by the holders of the note is of the opinion that the signature of Patrick Harris to the note is genuine, and that the signature on the note and that on the check of even date were both written by Patrick Harris. As no other expert evidence was given in by either party to the controversy, the probabilities are left by the experts evenly balanced, and the surrogate is therefore at liberty to disregard such testimony and to form his conclusion free from the conjectures of the expert witnesses on either side. This is certainly a great relief to the surrogate, as it would be manifestly repugnant to justice to find forgery on the unsupported testimony of a single opinion witness. Having reference to the even weight of testimony noted, we now recur to the presumption of innocence which must prevail in any case where the evidence is so evenly balanced as that of the experts. It is apparent that the presumption in question, if applied at this point, favors the holders of the note.

[4] But it is, fortunately, not on opinion evidence, or on the application of presumptions, that the solution of the issue of fact in this matter necessarily rests. The surrogate has pointed out that the genuineness of the check of 1903 was conceded by counsel for the executrix. The genuineness of the note is also. established by the testimony of a disinterested and unimpeached witness, Mr. De Angelo, who swears that Koller & Bro., the holders, offered to sell him this very note in the presence of Patrick Harris, and that Harris objected to the sale, stating that he would "take it up shortly." In view of Mr. De Angelo's testimony, the surrogate must find that the note is a valid obligation in the hands of Koller & Bro.

Let the findings and decision be accordingly.